**O**

# United States District Court
# Central District of California

| | |
|---|---|
| PRECISION ORTHOPEDIC IMPLANTS, INC., a California corporation; BARRY DWORKIN, an individual, | Case № 2:16-cv-02945-ODW (PLA) |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION TO DISMISS [10]** |
| LIMACORPORATE S.P.A., an Italian public limited company; GABRIELE LUALDI, an individual; MICHELE PIOVANI, an individual; and DOES 1 through 100, inclusive, | |
| Defendants. | |

## I.    INTRODUCTION

This case concerns torts stemming from a contract for the sale of medical devices.  Before the Court is Defendants' motion to dismiss all twelve claims in Plaintiffs' complaint.  (ECF No. 10.)  The Court **GRANTS** Defendants' motion to dismiss as to Plaintiffs' claims for fraudulent inducement, fraudulent concealment, negligent misrepresentation, quasi-contract, intentional interference with contract

(Lima USA and sales associates), and violation of California's Unfair Competition Law with leave to amend.  The Court also **GRANTS** Defendants' motion to dismiss as to Plaintiffs' claims for declaratory relief (vicarious liability, alter ego) and alternate claims for relief (waiver and estoppel, specific performance to compel arbitration) and dismisses those claims **WITHOUT PREJUDICE**.  Finally, the Court **STRIKES** as redundant Plaintiffs' claim for equitable restitution.

## II.   FACTUAL BACKGROUND

Defendant Limacorporate S.P.A. ("Limacorporate") is an Italian medical device maker and parent company of U.S. subsidiary Lima USA Incorporated ("Lima USA"). (Compl. ¶¶ 9, 27, ECF No. 1.)   Defendant Gabriele Lualdi was President of Limacorporate during the relevant period of time.  (*Id.* ¶ 4.)   Defendant Michele Piovani was the Business Development Director of Limacorporate during the relevant period of time.  (*Id.* ¶ 5.)

Sometime "prior to 2012," Limacorporate decided to enter the U.S. market for medical devices, open a U.S. subsidiary, obtain FDA approval for its devices, and seek local distributors.  (*Id.* ¶ 9.)   In approximately August of 2011, Defendants Limacorporate and Michele Piovani made a verbal commitment to Plaintiff Barry Dworkin that he would be their Los Angeles distributor.  (*Id.* ¶ 11.)   At that time, Defendants only had two business relationships in the Los Angeles area, one with "Dr. Shankwiler" and the other with Huntington Memorial Hospital in Pasadena.  (*Id.* ¶ 11.)

In September of 2011, Piovani and Dworkin began negotiating a distribution contract.  (*Id.* ¶ 12.)   In January of 2012, Defendants offered Dworkin a twenty-five percent commission on sales.  (*Id.* ¶ 13.)   On January 26, 2012 Piovani provided Dworkin with a draft Sales Representative Agreement.  (*Id.* ¶ 14.)   This agreement contained "representations to [P]laintiffs as to the minimum sales that [P]laintiffs would achieve" across Limacorporate's six device categories in the negotiated

1   territory.[1]   (*Id.* ¶ 18).   The draft agreement also made representations as to the
2   "specific products that Limacorporate S.P.A. would make available to plaintiffs to
3   sell." (*Id.* ¶ 24.)  These representations were repeated in the final version of the Sales
4   Representative Agreement disseminated to Dworkin for signature on February 24,
5   2012. (*Id.* ¶ 20, 25.)

6       On February 24, 2012, Dworkin signed the final version of the agreement and
7   began a five-year contract with Lima USA to distribute medical devices.  (*Id.* ¶¶ 21,
8   75.)  After the final Sales Representative Agreement was signed, Plaintiff and his
9   sales associate David Rodgers "commenced performance and began actively working
10  to schedule sales calls and on-site visits to doctors." (*Id.* ¶ 30.)  However, they
11  immediately ran into problems.  Product sample shipments and training sessions for
12  doctors were delayed, and the first devices were not available for sale until June of
13  2012, approximately three months after the contract began.  (*Id.*)  "There was product
14  unavailability in all categories." (*Id.* ¶ 31.)  The Diphos H was never available, the
15  resurfacing products were not available until the second or third quarter of 2013, and
16  the popular polyethylene 3-peg glenoid was not available until the fourth quarter of
17  2013.  (*Id.* ¶¶ 31–34.)  "All in all, Limacorporate S.P.A. did not have a full
18  complement of products in the various categories until the last part of 2013." (*Id.*
19  ¶ 36.)  Plaintiffs allege that Defendants "knew that they could not make available to
20  [P]laintiffs all of . . . [the] products promised," that certain devices had not yet been
21  given FDA approval, and that there would be "delays lasting months in making such
22  products available to U.S. distributors including [P]laintiffs." (*Id.* ¶ 42–43.)

23      Minimum sales "were not achieved." (*Id.* ¶ 38.)  Plaintiffs allege that
24  Defendants "knew or should have known that such minimum sales could not be
25  obtained in 2012 or 2013." (*Id.* ¶ 37.)  Plaintiff further alleges that when the sales did
26  not come in as expected, Defendants "lulled and induced [P]laintiffs to continue
27

28  [1] The six device categories were "reverse 36mm," "anatomic," "trauma," "resurfacing," "revision,"
and "DiPhos H." (Compl.  ¶ 24.)

selling their products." (*Id.* ¶ 38.)  Based on Defendants' conduct and representations, Plaintiffs believed they "would be able to continue to sell Limacorporate S.P.A.'s products for at least the entire term of the Sales Representative Agreement." (*Id.*)

On November 7, 2013, Dworkin received an email from a "U.S. product manager" admitting that the minimum sales figures in the Sales Representative Agreement were "unrealistic and should be revised." (*Id.*)  However, the figures were never revised. (*Id.*)

On March 19, 2014, Plaintiff "gave notice" that he was hiring a new sales associate, Marcie Rohach. (*Id.* ¶ 39.)  Five days later, on March 24, 2014, Lima USA terminated the Sales Representative Agreement "without cause and in breach of the Sales Representative Agreement, and prevented [P]laintiffs from further selling Limacorporate S.P.A.'s products." (*Id.*)  Lima USA continues to sell products in the Los Angeles area using Plaintiffs' former sales associates. (*Id.* ¶ 39, 85.)

On December 22, 2015, Plaintiffs made a demand for arbitration to Limacorporate and Lima USA. (*Id.* ¶ 40.)  On January 19, 2016, Limacorporate refused to join the arbitration. (*Id.*)  The arbitration against Lima USA is ongoing. (*Id.*)  On March 16, 2016, Plaintiffs filed this case in the California Superior Court, County of Los Angeles alleging (1) fraudulent inducement; (2) fraudulent concealment; (3) negligent misrepresentation; (4) breach of contract implied by law; (5) equitable restitution; (6) intentional interference with contract: Lima USA; (7) intentional interference with contract: sales associates; (8) declaratory relief: vicarious liability; (9) declaratory relief: alter ego liability; (10) violation of the California unfair competition law; (11) alternate declaratory relief: waiver and estoppel; and (12) specific performance to compel arbitration. (ECF No. 1–1.)  On April 29, 2016, Defendants removed the case to federal court. (ECF No. 1.)  On June 6, 2016, Defendants filed two motions to dismiss. (ECF Nos. 10–11.)  The first motion was to dismiss Defendants Stefano Cimatoribus and Gabriele Lualdi for lack of personal jurisdiction. (ECF No. 11.)  That motion has already been adjudicated. (*See* ECF No.

21.)  Left before the Court is the second motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and for lack of actual case in controversy pursuant to Federal Rule of Civil Procedure 12(b)(1).  (ECF No. 10.)[2]

## III.   LEGAL STANDARD

A court may dismiss a complaint pursuant to Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a motion to dismiss, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim.  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  The factual "allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff.  *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).  But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## IV.   DISCUSSION

### A. Judicial Notice

In considering a Rule 12(b)(6) motion to dismiss, courts are generally limited to information contained in the complaint.  *Lee*, 250 F.3d at 688.  When courts take into

---

[2] After considering the papers filed in support of the Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

account additional information, they run the risk of converting the motion into one for summary judgment.  Fed. R. Civ. P. 12(d).  That being said, there are two instances in which courts are allowed to take into account information outside of the complaint without converting the motion into one for summary judgment: judicial notice and incorporation by reference.  *Hsu v. Puma Biotechnology, Inc.*, No. SACV150865AGJCGX, 2016 WL 5859000, at *3 (C.D. Cal. Sept. 30, 2016) (citing *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).  Judicial notice allows courts to consider a fact that is not subject to reasonable dispute because it is generally known within the territory or can be determined from sources of unquestionable accuracy.  Fed. R. Evid. 201.  Incorporation by reference allows documents physically attached to the complaint or those which are (1) referenced in the complaint, (2) central to the plaintiff's claim, and (3) of unquestioned authenticity by either party, to be considered.  *Hsu*, 2016 WL 5859000, at *4 (citing *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006)).

Defendants submitted several documents with their motion that they wish the Court to consider in addition to the complaint, including a "final" version of the Sales Representative Agreement, Plaintiffs' demand for arbitration and attached Sales Representation Agreement, Lima USA's arbitration counterclaim and attached Sales Representative Agreement, and the initial order of the arbitrator setting an arbitration schedule.  (*See* Arbitration Documents, Ex. A–D, ECF No. 10–1.)

None of these documents concern facts known in the territory or are derived from sources of unquestionable accuracy.[3]  *See* Fed. R. Evid. 201.  Therefore, judicial

---

[3] Defendants point to *Kurtcu v. U.S. Parking Inc.*, No. C 08-02113 WHA, 2008 WL 2445080, at *2 (N.D. Cal. June 16, 2008) for the proposition that judicial notice of arbitration documents is proper.  (ECF No. 10–1.)  This unpublished case is distinguishable from the case at bar.  The *Kurtcu* court took notice of certain arbitration documents because the documents were produced by a federal agency.  2008 WL 2445080, at *2; *see also Papai v. Harbor Tug & Barge Co.,* 67 F.3d 203, 207 n.5 (9th Cir. 1995) (finding judicial notice of administrative agency documents proper) (overruled on other grounds).  Here, the arbitration is being conducted by the American Arbitration Association, a private entity.

notice is not appropriate, and the remaining issue is whether these documents are properly incorporated by reference. Plaintiffs dispute the authenticity of the three Sales Representative Agreements Defendants submitted with their motion because several pages of each agreement are labeled in large letters with the word draft. (*See e.g.*, Ex. A at 26, 30–42, ECF No. 10–1; Opp'n 6, ECF No. 12.) Clearly this undermines the authenticity of Exhibit A which purports to be the final version of the Sales Representative Agreement. (*See* Ex. A, ECF No. 10–1.) It also calls into question the other two Sales Representative Agreements submitted. The two versions of the agreement referenced in the complaint are a draft version from January 26, 2012, and a final version from February 24, 2012; the versions submitted here appear to be neither wholly drafts, nor wholly final versions. (*See* Compl. ¶¶ 14, 26.) As such, Plaintiffs have properly raised concerns regarding authenticity of the Sales Representative Agreements submitted and the Court cannot consider the documents in evaluating this motion to dismiss. *Hsu*, 2016 WL 5859000, at *4 (courts can only consider documents incorporated by reference that are of unquestioned authenticity).

Likewise, the Court will not admit the arbitration documents (claim, counterclaim, order). Neither side relies on the substance of these documents in their motion, opposition, or reply currently under submission. Therefore, it would not serve any purpose to admit them. Accordingly, the Court considers only the complaint in adjudicating this motion.

**B. Individual Causes of Action**

**1. Fraud Based Claims (fraudulent inducement, fraudulent concealment, negligent misrepresentation)**

Plaintiffs' conception of Defendant's fraud is not complex. Plaintiffs allege that Defendants used misrepresentations and concealments regarding minimum sales, commissions, and the devices that would be available for sale to induce them to enter into a contract with Lima USA. (Compl. ¶ 26.) Once bound, Plaintiffs would not be able to make the represented amount of sales, the contract would terminate, and

1  Defendants would reap the benefits of Plaintiffs' initial development of the Los
2  Angeles market for their medical devices.  (*Id.* ¶¶ 39, 42, 56.)

3          Defendants allege that regardless of whether such a fraud occurred or is legally
4  cognizable, all three of Plaintiffs' claims associated with the fraud (fraudulent
5  inducement, fraudulent concealment, and negligent misrepresentation), are barred by
6  statutes of limitation.  (Mot. 6–7; Reply 3–4, ECF No. 17.)  The Court considers this
7  argument below.

8                          **a.  Statute of Limitations**

9          It has long been held in the Ninth Circuit that where the running of a statute of
10  limitations is apparent on the face of a complaint, courts may consider such arguments
11  upon the filing of a Rule 12(b)(6) motion to dismiss.  *Jablon v. Dean Witter & Co.*,
12  614 F.2d 677, 682 (9th Cir. 1980); *Diaz v. Safeway Inc.*, No. C-07-01902 RMW, 2007
13  WL 2793367, at *3 (N.D. Cal. Sept. 26, 2007).

14          The statute of limitations in California for claims sounding in fraud such as
15  fraudulent inducement and fraudulent concealment is three years.  Cal. Code of Civ.
16  P. § 338(d).  The statute of limitations for negligent misrepresentation is also three
17  years where the claim sounds in fraud.  *Malmen v. World Sav. Inc.*, No. CV 10-9009
18  AHM JEMX, 2011 WL 1464587, at *3 (C.D. Cal. Apr. 18, 2011) (citing *Fanucci v.*
19  *Allstate Ins. Co.,* 638 F. Supp. 2d 1125, 1133 (N.D. Cal. 2009)).[4]

20          In California, the statute of limitations clock generally begins to run when a
21  cause of action accrues.  *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049,
22  1054 (9th Cir. 2008).  A "cause of action accrues when "the claim is complete with all
23  of its elements."  *Id.* (quoting *Slovensky v. Friedman,* 142 Cal. App. 4th 1518, 1528
24  (2006)).  However, where fraud is at issue, the clock does not begin to run until the
25  fraud is discovered.  Cal. Code of Civ. P § 338(d).

26
27

28  _____
[4] Defendants concede that the statute of limitation for negligent misrepresentation in this case is
three years.  (Mot. 6.)

It is undisputed that the alleged misrepresentations and concealments at issue here occurred before the contract was finalized on February 24, 2012, approximately four years prior to the filing of this lawsuit.  (Compl. ¶¶ 14, 26; Mot. 6–7, 10; Opp'n 3.)  Therefore, the critical questions are when Plaintiffs suffered damages and when they discovered the fraud. Defendants argue that Plaintiffs suffered damages and discovered the fraud in 2012 when the promised products were not made available for sale and the promised minimum sales figures could not be reached.  (Mot. 7–8; Reply 4.)  Plaintiffs argue they did not suffer damages or discover the fraud until the contract with Lima USA was terminated on March 24, 2014.  (Opp'n 10–11.)

The Court agrees with Defendants.  First, according to the complaint, Plaintiffs suffered damages from Defendants' fraudulent conduct in 2012.  Defendants allegedly promised Plaintiffs they would make certain sales and commissions in 2012 and those sales and commissions were not, and could not have been, actually achieved.  (Compl. ¶¶ 37, 38, 42; Opp'n 4.)

Second, Plaintiffs were on notice of Defendants' fraud in 2012.  None of the devices Defendants promised Plaintiffs would be available for sale *were* in fact available for sale when the contract with Lima USA began on February 24, 2012, thereby immediately exposing Defendants' fraud.  (Compl. ¶ 30, 76.)  Moreover, despite their considerable efforts, Plaintiffs were unable to reach the promised minimum sales figures for 2012, thereby exposing those figures as fraudulent.  (*Id.* ¶¶ 30, 37, 38, 42.)  Consequently, the statute of limitations clock started at some point in 2012 and had run by March 16, 2016, when Plaintiffs filed this lawsuit.

### b.  Equitable Estoppel

Fearing that the Court might find a statute of limitations issue, Plaintiffs assert equitable estoppel as a defense.  (Opp'n 11.)  Plaintiffs claim that Defendants "lulled" them into continuing performance of the contract with Lima USA even after they failed to reach the promised minimum sales figures and suffered damages.  (*Id.*; Compl. ¶ 38.)

Equitable estoppel, which the Ninth Circuit equates with fraudulent concealment, "halts the statute of limitations when there is active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." *Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2006) (internal quotations omitted).  The Ninth Circuit requires that facts underlying a claim for equitable estoppel be pleaded with particularity pursuant to Rule 9(b). *Huseman v. Icicle Seafoods, Inc.*, 471 F.3d 1116, 1122 (9th Cir. 2006) (citing *Guerrero*, 442 F.3d at 706–707).  The sole allegation in the complaint relating to equitable estoppel indicates that "defendants and their agents lulled and induced plaintiffs to continue selling Limacorporate S.P.A.'s products." (Compl. ¶ 38.)  This conclusory allegation is not enough to avoid a motion to dismiss, regardless of whether the particularized pleading standard or the traditional Rule 8(a) pleading standard is applied.  *See Knowles v. Pac. Gas & Elec. Co.*, No. C 07-2284 CW, 2008 WL 2705097, at *5 (N.D. Cal. July 8, 2008) (finding that "conclusory allegations" would not suffice to support a claim for equitable estoppel at the motion to dismiss stage).

Defendants argue that the allegation in the complaint relating to the November 7, 2013, email they received from a "U.S. product manager" also supports their claim for equitable estoppel. (Compl. ¶ 38; Opp'n 11.)  However, this email, as described in the complaint, merely admits that the minimum sales figures were unrealistic and "should be revised," it does not indicate that the minimum sales figures *would be* revised or otherwise encourage Plaintiffs in *any way* to continue performance of the contract.  (Compl. ¶ 38.)  Further, it is unclear whether the statement was made by an employee of Lima USA or an employee of Limacorporate.  (*Id.*)  Finally, Plaintiffs argue the allegation relating to the hiring of Marcie Rohach days before the contract's termination supports their claim for equitable estoppel.  (*Id.* ¶ 39; Opp'n 11.)  However, in the statute of limitations context, the equitable estoppel analysis "focuses on the actions of the defendant" not on the conduct of the plaintiff.  *Diaz*, 2007 WL

2793367, at *4 (quoting *Socop-Gonzalez v. INS,* 272 F.3d 1176, 1184 (9th Cir. 2001)). In sum, the Court does not find Plaintiffs' arguments persuasive.

The Court will allow Plaintiffs a single opportunity to amend their complaint for the purpose of clarifying the facts underlying Defendants' alleged "lulling." *See Wagner v. Wal-Mart Stores, Inc,* No. 13-CV-03475-NJV, 2013 WL 5645169, at *4 (N.D. Cal. Oct. 16, 2013) (cumulating cases where plaintiffs were allowed leave to amend for the purpose of clarifying facts underlying their equitable tolling claims[5]). Therefore, the Court **DISMISSES** Plaintiffs' fraud claims with leave to amend.

## 2. Equity Based Claims (contract implied by law and equitable restitution)

Plaintiffs' next two causes of action are for breach of contract implied by law (more commonly known as a quasi-contract) and for "equitable restitution." (Compl. ¶¶ 67–73.) To begin, the Court strikes Plaintiffs' claim for "equitable restitution" pursuant to Rule 12(f) as redundant with their claim for contract implied by law. *See* Fed. R. Civ. P. 12(f) (a court may strike "any redundant, immaterial, impertinent, or scandalous matter.") A claim for quasi-contract or contract implied by law "is simply another way of describing the basis for the equitable remedy of restitution when an unjust enrichment has occurred." *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 n.6 (2004). Here, Plaintiffs allege that unjust enrichment occurred in connection with their equitable restitution claim. (Compl. ¶ 73.) As such, it is redundant with Plaintiffs' claim for contract implied by law. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (confirming that where restitution or unjust enrichment are sought, the appropriate claim is quasi-contract).

With their quasi-contract claim, Plaintiffs seek to recover the value of the benefit they conferred upon Defendants in "developing the Southern California area for [Limacorporate's] products." (Compl. ¶ 39; Opp'n 12.) As such, Plaintiffs'

---

[5] The concept of equitable tolling is closely related to equitable estoppel. *See Diaz*, 2007 WL 2793367, at *4 ("Both equitable tolling and equitable estoppel can be used to stop a limitations period from continuing to run after it has already begun to run.") (internal quotations omitted).

theory of recovery necessarily relies on the concept of quantum meruit, a subspecies of quasi-contract claim.  A "quantum meruit claim . . . is a quasi-contract claim for the reasonable value of services rendered."  *Jogani v. Superior Court*, 165 Cal. App. 4th 901, 909 (2008).

Nonetheless, Plaintiffs encounter the same statute of limitations issues they faced in the fraud context.[6]  Defendants' unjust enrichment started in 2012 when Plaintiffs entered into a contract with Lima USA based on Defendants' fraud and began building a market for Defendants' products in Los Angeles.  (Compl. ¶ 30.) For their part, Plaintiffs would have become aware of Defendants' fraud, and thus Defendants' unjust enrichment, in 2012 when the promised products were not made available for sale and the promised minimum sales figures could not be reached.  (*Id.* ¶¶ 31–38; Mot. 15.)

Plaintiffs again depend on the same factually deficient claim for equitable estoppel they put forth in the fraud context.  (Opp'n 13.)  Therefore, as above, the Court **DISMISSES** Plaintiffs' quasi-contract claim with leave to amend to allow for clarification of the facts underlying Defendants' claim for equitable estoppel.

### 3. Intentional Interference with Contract Claims

Plaintiffs allege that Defendants intentionally interfered with their Lima USA and sales associate contracts by failing to timely supply the promised devices. (Compl. ¶¶ 76, 84.)  To state a claim for intentional interference with contractual relations in California, a plaintiff must allege facts sufficient to establish (1) a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of this contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.  *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

---

[6] The statute of limitations in California for quasi contract claims is two years.  Cal. Code of Civ. P. § 339(1); *Creditors Collection Serv. v. Castaldi*, 38 Cal. App. 4th 1039, 1044 (1995)

Even assuming that Plaintiffs have alleged sufficient facts to support the five elements of this claim, they again face statute of limitations issues.[7] Similar to the prior two sections, Plaintiffs argue that the initial intentional interference did not occur until March 24, 2014, when Lima USA terminated the Sales Representative Agreement. (Opp'n 17.) However, this argument is belied by case law and the complaint itself.

To begin, intentional interference claims do not require that the interference cause a breach of contract; it is sufficient that the interference cause a disruption of contract. A disruption occurs when "defendants conduct [makes] the plaintiffs performance . . . under the contract more burdensome or costly." *Amytony Homes, Inc. v. Abarquez*, No. G033374, 2004 WL 2028022, at *6 (Cal. Ct. App. Sept. 8, 2004) (citing *Golden West Baseball Co. v. City of Anaheim*, 25 Cal. App. 4th 11, 51 (1994)). Clearly, both of the contracts became more burdensome when Defendants failed to timely supply the promised devices in 2012. Plaintiffs had fewer devices to sell doctors, made fewer sales, and could not reach the minimum sales figures for 2012. (Compl. ¶¶ 37–38, 76–77.) Likewise, with fewer sales, it was difficult for Plaintiffs to adequately compensate their sales associates. (*Id.* ¶ 84.) Therefore, the Court finds that the contracts were disrupted in 2012 when Defendants failed to supply Plaintiffs with the promised devices.

This finding should come as little surprise. Plaintiffs themselves acknowledge in the plain language of the complaint that it was Defendants' failure to supply the products that caused the initial disruption. First, with regard to the Lima USA contract, the complaint indicates "Limacorporate S.P.A., Gabriele Lualdi, Michele Piovani . . . and other defendants failed to make available to plaintiffs all of Limacorporate's products *thereby preventing, disrupting, and interfering* with

---

[7] The statute of limitations in California for intentional interference claims is two years. Cal. Code of Civ. P. § 339(1); *Gaines v. Waltz*, No. D059686, 2013 WL 342556, at *2 (Cal. Ct. App. Jan. 30, 2013). However, it may be three years where the claim involves fraud. *Gaines*, 2013 WL 342556, at *3.

plaintiff's performance under the Sales Representative Agreement.   (*Id.* ¶ 76 (emphasis added).)  Second, with regard to the sales associate contracts, the complaint indicates "Defendants failed to make available to plaintiffs all of Limacorporate S.P.A.'s products to sell to doctors and hospitals, *thereby preventing, disrupting, and interfering* with plaintiffs' performance under the Sales Representative Agreement and under plaintiffs' contracts with the sales associates, who were hired to carry out plaintiffs' performance under the Sales Representative Agreement."   (*Id.* ¶ 84 (emphasis added).)   These two excerpts show that Plaintiffs associated the initial disruption with Defendants' failure to timely supply the devices.

As the contracts were initially disrupted in 2012, the statute of limitations had run by March 14, 2016, when this lawsuit was filed.   To avoid the statute of limitations, Plaintiffs again depend on the same factually deficient claim for equitable estoppel they put forth in the fraud and quasi-contract contexts.   (Opp'n 17.) Therefore, as above, the Court **DISMISSES** Plaintiffs' intentional interference claims with leave to amend to allow for clarification of the facts underlying Defendants' claim for equitable estoppel.

### 4.  Declaratory Relief Claims (vicarious liability and alter ego)

Plaintiffs next request that the Court declare Defendants vicariously liable for any award that might result from the pending arbitration between Plaintiffs and Lima USA.  (*Id.* ¶¶ 89–91.)  Plaintiffs also request that the Court declare Defendants to be the alter ego of Lima USA for the purpose of holding Defendants liable for any award that might result from the pending arbitration between Plaintiffs and Lima USA.  (*Id.* ¶¶ 92–102.)   Defendants move to dismiss Plaintiffs' two declaratory relief claims pursuant to Rule 12(b)(1) for lack of an actual case or controversy as no arbitration award has yet been entered.  (Mot. 20–21; Reply 11.)

In deciding whether to consider a declaratory judgment claim, courts must first determine whether there is an actual case or controversy within their jurisdiction. *Principal Life Ins. Co. v. Robinson,* 394 F.3d 665, 669 (9th Cir. 2005).  To make this

determination, courts apply the Article III test.  *Id.*  "A claim is usually ripe if the issues raised are primarily legal, do not require further factual development, and the challenged action is final."  *Center For Biological Diversity v. Kempthorne,* 588 F.3d 701, 708 (9th Cir. 2009) (internal quotations omitted).

Here, the challenged action is not final; both parties and the complaint admit that the arbitration is ongoing.  (Compl. ¶ 40; Mot. 21; Opp'n 20.)  Further, it is not clear when the arbitration will be concluded or whether Plaintiffs will obtain an award.   As such, the Court does not find these two declaratory relief claims sufficiently ripe for adjudication.  Accordingly, the Court **DISMISSES** the two claims **WITHOUT PREJUDICE**.  These claims may be refiled in the event that the pending arbitration eventually results in an award for Plaintiffs.

### 5. Unfair Competition Law

Plaintiffs next claim is based on the UCL.  The UCL protects competitors and consumers from unlawful, unfair, and fraudulent business practices and provides for restitution and injunctive relief.  *Hale v. Sharp Healthcare*, 183 Cal. App. 4th 1373, 1381 (2010).  Because the UCL contains a fraud component, federal courts apply the particularized Rule 9(b) pleading standard when adjudicating claims under the statute. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

A plaintiff bringing a UCL claim need only satisfy one of the three prongs: the unlawful prong, the unfair prong, or the fraud prong.  *Hale*, 183 Cal. App. 4th at 1381. Each prong has its own requirements.   The unlawful prong requires a plaintiff to allege facts sufficient to show an underlying violation of law "be it civil or criminal, federal, state, or municipal, regulatory, or court made."  *Hewlett v. Squaw Valley Ski Corp.*, 54 Cal. App. 4th 499, 531 (1997).

The unfair prong requires a plaintiff to show that the relevant practice is legally "unfair."  *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999) ("Courts may not simply impose their own notions of the day as to what is fair or unfair.")  If the plaintiff is a competitor, "unfair" refers to conduct that

"threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1191 (2012) (quoting *Cel–Tech Communications,* 20 Cal. 4th at 180)). If the plaintiff is a consumer then "unfair" may be defined more broadly, but must still be "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Id.*; *see also Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1267 (2006).

Under the fraud prong, a plaintiff must show that "members of the public are likely to be deceived" by the defendant's fraudulent practice. *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167 (2000).

The Court analyzes each of the three prongs in turn. First, because all of Plaintiffs' other claims fail, no qualifying conduct remains on which to base the unlawful prong. *See Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1190 (N.D. Cal. 2009) ("Since the Court has dismissed all of Plaintiff's predicate violations, Plaintiff cannot state a claim under the unlawful business practices prong of the UCL."). Second, Plaintiffs have not alleged an antitrust violation or a violation of "some legislatively declared policy or proof of some actual or threatened impact on competition." Thus, Plaintiffs have not made out a claim based on the unfair prong.

Lastly, the Court finds that Plaintiffs have not made out a claim under the fraud prong. To this point in the decision, the Court has not had reason to fully analyze Plaintiffs' fraud-based claims as each was dismissed on statute of limitations grounds. However, Plaintiffs UCL claim does not suffer from the same statute of limitations issues.[8]

It is this Court's view that parties should not be allowed to bring fraud-based claims where, as here, the alleged misrepresentations later appear verbatim in a final

---

[8] The statute of limitations for UCL claims is four years. Cal Bus. & Prof. Code § 17208.

contract.  (Compl. ¶ 20.)  Defendants cite to multiple district court cases in support of this proposition.  *See Diamond State Ins. Co. v. Marin Mountain Bikes, Inc.*, No. C 11-5193 CW, 2012 WL 3945531, at *9–10 (N.D. Cal. Sept. 10, 2012); *Clayton v. Automated Gaming Techs., Inc.*, No. 2:13-CV-00907-JAM, 2014 WL 1334005, at *3 (E.D. Cal. Apr. 3, 2014) ("To allow a fraud claim [where the false representations underlying it are those made in the contract itself] would open the door to tort claims in virtually every case in which a party promised to [perform] under a contract but failed to do so.") (internal quotations omitted).

The Court points to *Clayton* specifically for its factual similarity to the case at bar.  2014 WL 1334005, at *3.  The plaintiff in that case alleged fraud on the basis of statements the defendant made during contractual negotiations.  *Id.*  The parties then reached an agreement that incorporated those same statements.  *Id.*  The court found that the appropriate remedy in such a situation was breach of contract, not fraud, and dismissed the plaintiff's fraud claim.  *Id.*

The Court is aware that Defendants are not parties to the contract in this case and that the UCL is not technically a tort. Yet this does not change the fact that as in *Clayton*, Plaintiffs' remedies lie in breach of contract.  Nonetheless, the Court will allow Plaintiffs to amend the complaint to assert any misrepresentations above and beyond those that appeared in the final contract.  *See Diamond State*, 2012 WL 3945531, at *10 (allowing party amendment to show "actionable fraudulent representations" not included in the contract itself).  Therefore, the Court **DISMISSES** Plaintiffs' UCL claim with leave to amend.[9]

### 6. Plaintiffs' Remaining Claims

Plaintiffs indicate in their opposition that the remaining causes of action (eleven and twelve) are no longer necessary because Limacorporate is not asserting that it was a party to Plaintiffs' contract with Lima USA.  (Opp'n 24.)  Therefore, the Court

---

[9] While Plaintiffs must first remedy the statute of limitations issues in their other fraud-based claims, the Court strongly advises them to take into account the Court's reasoning here moving forward.

**DISMISSES** these claims **WITHOUT PREJUDICE**.   These claims may be reasserted in the event that Defendants attempt to argue a contrary position.

## V.   CONCLUSION

In light of the foregoing, the Court:

- **GRANTS** Defendants' motion to dismiss as to Plaintiffs' claims for fraudulent inducement, fraudulent concealment, negligent misrepresentation, quasi-contract, intentional interference with contract (Lima USA and sales associates), and violation of the UCL with leave to amend.

- The Court also **GRANTS** Defendants' motion to dismiss as to Plaintiffs' claims for declaratory relief (vicarious liability, alter ego), and alternate claims for relief (waiver and estoppel, specific performance to compel arbitration) and dismisses those claims **WITHOUT PREJUDICE**.

- Additionally, the Court **STRIKES** as redundant Plaintiffs' claim for equitable restitution.

Plaintiffs shall have thirty days to amend their complaint.


**IT IS SO ORDERED.**

December 20, 2016

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

18